**EXHIBIT A**



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

**NIKKI R. HALEY**
Governor

**RAYMOND G. FARMER**
Director

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

February 18, 2014

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
c/o Corporation Service Company
1703 Laurel Street
Columbia, SC 29201-0000

Dear Sir:

On February 18, 2014, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process.** When replying, please refer to File Number 154236, Roberta Karnofsky v. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, 2014-CP-10-806.

By:

David E. Belton
Senior Associate General Counsel
(803)737-6132

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:     George J. Kefalos
        46A State Street
        Charleston, SC   29401

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| ROBERTA KARNOFSKY | ) | CIVIL ACTION COVERSHEET |
| Plaintiff(s) | ) | |
| | ) | 2012-CP - 10- 806 |
| vs. | ) | 2014 |
| | ) | |
| MASSACHUSETTS MUTUAL LIFE INSURANCE | ) | |
| COMPANY | ) | |
| Defendant(s) | ) | |

Submitted By: Oana D. Johnson

Address: 46 A State Street
Charleston, SC 29401

| SC Bar #: | 100373 |
|---|---|
| Telephone #: | (843) 722-6612 |
| Fax #: | |
| Other: | |
| E-mail: | oana@kefaloslaw.com |

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION  (Check all that apply)

*If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.    ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20___-CP-___-___ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☒ Other (399) Insurance Bad Faith | ☐ Other (499) |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |

| Special/Complex /Other | | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | ☐ Petition for Workers Compensation Settlement Approval (780) | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | | ☐ Other (999) |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | ☐ Other (799) | |
| | ☐ Sexual Predator (510) | | |

Submitting Party Signature: _Oana D. Johnson_    Date:  02/06/14

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

## FOR MANDATED ADR COUNTIES ONLY

Allendale, Anderson, Beaufort, Clarendon, Colleton, Florence, Greenville, Hampton, Horry, Jasper, Lee, Lexington, Pickens (Family Court Only), Richland, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:** **You must comply with the Supreme Court Rules regarding ADR. Failure to do so may affect your case or may result in sanctions.**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF    CHARLESTON | ) | |
| | ) | |
| ROBERTA KARNOFSKY | ) | SUMMONS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FILE NO. 2014-CP-10-___ |
| | ) | |
| MASSACHUSETTS MUTUAL LIFE | ) | |
| INSURANCE COMPANY | ) | |
| Defendant. | ) | |

TO THE DEFENDANT ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

CHARLESTON, South Carolina

Dated: February 6, 2014

_____
Plaintiff/Attorney for Plaintiff

Address:    George J. Kefalos, Esquire
            Oana D. Johnson, Esquire
            46-A State Street
            Charleston, SC 29401
            (843) 722-6612
            george@kefaloslaw.com
            oana@kefaloslaw.com

            Geoffrey Waggoner, Esquire
            WAGGONER LAW FIRM
            Post Office Box 865
            Mt. Pleasant, SC 29465
            (843) 972-0426
            ghwaggoner@waggonerfirm.com

SCCA 401 (5/02)

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMONS PLEAS
                        )    FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF CHARLESTON    )    C.A. No.  2014-CP-10- 806

ROBERTA KARNOFSKY       )
                        )
            Plaintiff,  )
                        )    **COMPLAINT**
        - versus -      )    (Insurance Bad Faith)
                        )    Jury Trial Demanded
                        )
Massachusetts Mutual Life )
Insurance Company       )
                        )
            Defendant.  )
_____)

Plaintiff, complaining of the Defendant alleges and says as follows:

1.      Plaintiff is an individual and a resident of Charleston County, South Carolina.

2.      Defendant is a corporation organized and existing under the laws of a State

other than South Carolina, licensed to do business in South Carolina with offices in

Charleston County, South Carolina and in the business of a disability insurer.

3.      The parties hereto, the subject-matter hereof, and all things and matters

hereinafter alleged are within the jurisdiction of this Honorable Court.

4.      That heretofore, the plaintiff was insured by Defendant under Policy

8,095,282 against loss due to disability.  (Exhibit 1)

5.      That at all times relevant hereto Plaintiff is totally or partially disabled as

defined by the policy, having become disabled as of April 2007.

7.      That Defendant approved benefits for total disability starting July 12, 2011

until February 9, 2012.

8.      That Defendant approved benefits for partial disability from September 10,

1

2010 through July 11, 2011 and from March 12, 2012 through June 2012.

9. That despite repeated demands, the Defendant failed and refused, and continues to fail and refuse to provide Plaintiff with benefits due to her from the date she became disable until September 10, 2010 and from June 2012 to present.

## FOR A FIRST CAUSE OF ACTION

8. All of the allegations contained in paragraph 1 - 6 are hereby incorporated herein as if they had been set forth fully hereunder.

9. That the Defendant's conduct constitutes a breach of the insurance policies.

10. Plaintiff is entitled to recover actual damages and pre-judgment interest as a result of Defendant's conduct.

## FOR A SECOND CAUSE OF ACTION

11. All of the allegations contained in paragraph 1 - 6 are hereby incorporated herein as if they had been set forth fully hereunder.

12. That the Defendant's refusal to pay the contracted for benefits is without reasonable basis and in bad faith.

13. Plaintiff is entitled to damages against the Defendant in the amount of actual, consequential and punitive damages.

## FOR A THIRD CAUSE OF ACTION

14. All of the allegations contained in paragraph 1 - 6 are hereby incorporated herein as if they had been set forth fully hereunder.

15. This action is brought pursuant to the Uniform Declaratory Judgment Act to resolve a justiciable controversy.

2

16.    Plaintiff is informed and believes she is entitled to a declaration that the Defendant owes her benefits for disability under the aforesaid policy.

17.    Plaintiff is informed and believes she is entitled to reimbursement for the costs and attorney's fees incurred for the bringing of this action.

WHEREFORE, Plaintiff prays judgment against the Defendant in the amount of actual, consequential, and punitive damages together with attorney fees and the costs and disbursements of the action in an amount to be determined by this Court.

GEORGE J. KEFALOS, P.A.

BY:    _Oana D. Johnson_

George J. Kefalos, Esquire
Oana D. Johnson, Esquire
46 A State Street
Charleston, SC  29401
(843) 722-6612
george@kefaloslaw.com
oana@kefaloslaw.com

ATTORNEYS FOR THE PLAINTIFF

Charleston, South Carolina
This ___ day of February, 2014

3

# EXHIBIT 1

# EXHIBIT 1

# Connecticut Mutual Life Insurance Company

*It is our pleasure to issue this valuable policy.*

| | |
|---|---|
| **INSURED** | ROBERTA S KARNOFSKY |
| **DATE OF ISSUE** | NOV 17, 2000 |
| **POLICY NUMBER** | 8,095,282 |
| **PRODUCT** | DISABILITY INCOME |

# TABLE OF CONTENTS

**Part**                                                                                          **Page**

POLICY SPECIFICATIONS .........................................................................................................

DEFINITIONS .......................................................................................................................... 1

DISABILITY BENEFITS ............................................................................................................. 3
      a) Total Disability Benefits
      b) Presumptive Total Disability Benefits
      c) Partial Disability Benefits
      d) Recovery Benefit
      e) Adjustment to Pre-disability Income
      f) Recurring Disability

OTHER BENEFITS ..................................................................................................................... 4
      a) Benefits for Rehabilitation
      b) Benefits to Survivors
      c) Waiver of Premium
      d) Dividends
      e) Paying Premiums With Accumulated Dividends
      f) Reinstatement
      g) Conversion Privilege at Expiration Date

PREMIUM PROVISIONS .............................................................................................................. 6
      a) Premium Payment Mode
      b) Changing Your Premium Mode
      c) Premium Structure
      d) Changing the Premium Structure
      e) Grace Period
      f) Refunding Premiums at the Insured's Death

CLAIMS ...................................................................................................................................... 6
      a) Notice of Claim
      b) Claim Forms
      c) Proof of Disability
      d) Payment of Claim
      e) Whom We Will Pay
      f) Partial Payment

WHAT IS NOT COVERED ........................................................................................................... 7
      a) Disabilities Not Covered
      b) Suspended Coverage While In Military
      c) Pre-Existing Condition Limitations

GENERAL RULES ....................................................................................................................... 8
      a) The Contract
      b) Policy Specifications
      c) Right To Apply For Additional Monthly Benefits
      d) Changing the Policy
      e) Assigning or Transferring this Policy
      f) Time Limit on Certain Defenses
      g) Legal Action Against Us
      h) Misstatement of Age
      i) Conformity With State Statutes

XL-A-91(SC)

# Connecticut Mutual Life Insurance Company
**Hartford, Connecticut**

**INSURED** ROBERTA S KARNOFSKY                    8,095,282    **POLICY NUMBER**

We at Connecticut Mutual Life believe You should read Your Policy carefully. We have written it in plain English so You will understand the terms. We will, subject to these terms, pay the benefits to the Recipient of Benefits if the Insured should become Disabled while the Policy is In Force. This Policy is a legal contract between the Owner and the Company.

We provide benefits for a loss arising from a Sickness that first appears (makes itself known) after the Policy becomes Effective and while this Policy is In Force. We also provide benefits for a loss resulting from an Injury that happens while the Policy is In Force.

We provide benefits for a loss arising from a condition that existed before the Policy was In Force, if the condition was fully and accurately described in the application and We did not specifically exclude the condition from coverage. The loss must occur while the Policy is In Force.

**RENEWAL PROVISION.** We will not cancel this Policy. We will not change the premiums from those shown in the Policy Specifications, unless requested to do so by You. As long as the premiums are paid on time, We will continue coverage until the Expiration Date.

This Policy is issued by Connecticut Mutual Life Insurance Company from Our Home Office, 140 Garden Street, Hartford, Connecticut 06154 on the Issue Date shown in the Policy Specifications.

### READ YOUR POLICY CAREFULLY

*Christine C. Pearce*
SECRETARY

*My W. Slur*
PRESIDENT

REGISTRAR

### TEN DAY RIGHT TO EXAMINE POLICY

If for any reason You decide not to keep this Policy, send it to Us within 10 days after receiving it. Send it to Our Home Office or to the agent who sold You the Policy. We will treat the Policy as though it never had been issued. We will refund any premium paid.

Countersigned By _____    Licensed Resident Agent

**DISABILITY INCOME POLICY**
Noncancellable - Rates guaranteed for the life of the Policy
Guaranteed continuable to age 65
Participating - Annual Dividends
Convertible at Age 65

XL-A-91(SC)

(xla91asc)

# ENDORSEMENT

## CHANGE OF INSURER NAME AND ADDRESS
## NOTICE OF ANNUAL MEETING

CONNECTICUT MUTUAL LIFE INSURANCE COMPANY ("Connecticut Mutual") and MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY ("MassMutual") have merged. MassMutual is the surviving Company. As a result, MassMutual has succeeded to all liabilities, duties, and rights of Connecticut Mutual. All references in this policy to Connecticut Mutual are hereby changed to MassMutual.

The MassMutual Home Office is:

**Massachusetts Mutual Life Insurance Company**
**Springfield, Massachusetts 01111-0001**
**1-800-272-2216**

The back page of this policy is hereby changed to add the following **Notice of Annual Meeting:**

The Insured is hereby notified that by virtue of this policy he or she is a member of Massachusetts Mutual Life Insurance Company and is entitled to vote either in person or by proxy at any and all meetings of said Company. The annual meetings are held at its Home Office, in Springfield, Massachusetts, on the second Wednesday of April in each year at 2 o'clock p.m.

This Endorsement forms a part of, and should be attached to, this policy.

## MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY

*Christine C. Pearce*

Secretary

E5051

(e5051)

| POLICY SPECIFICATIONS |
|---|

| | | | |
|---|---|---|---|
| Insured: | ROBERTA S KARNOFSKY | Policy Number: | 8,095,282 |
| Policy Date: | NOV 17, 1994 | Age and Sex: | 39 FEMALE |
| Date of Issue: | NOV 17, 2000 | Occupational Class: | 4A |
| Premium Class: | STANDARD, NON-TOBACCO RATES | | |

| DISABILITY INCOME POLICY |
|---|

| | |
|---|---|
| Policy Owner: | ROBERTA S KARNOFSKY |
| Recipient of Benefits: | ROBERTA S KARNOFSKY |
| Policy Expiry Date: | NOV 17, 2021 |
| Monthly Anniversary: | 17TH DAY OF EACH MONTH |
| Annual Premiums: | SEE PREMIUM SUMMARY |
| Modal Premiums: | SEE PREMIUM SUMMARY |
| Premium Mode: | SEMI-ANNUAL |

| COVERAGE SUMMARY |
|---|

| Coverage Date | Coverage | Monthly Benefit | Waiting Period | Maximum Benefit Period |
|---|---|---|---|---|
| | POLICY COVERAGE | | | |
| NOV 17, 1994 | Total Disability Benefit | $4,500 | 90 DAYS | TO AGE 65 |
| NOV 17, 1994 | Partial Disability Benefit | $4,500 | 90 DAYS | TO AGE 65 |
| NOV 17, 1995 | Total Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1995 | Partial Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1996 | Total Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1996 | Partial Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1997 | Total Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1997 | Partial Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1998 | Total Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1998 | Partial Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1999 | Total Disability Benefit | $225 | 90 DAYS | TO AGE 65 |
| NOV 17, 1999 | Partial Disability Benefit | $225 | 90 DAYS | TO AGE 65 |

**COVERAGE SUMMARY (continued for)**

| | |
|---|---|
| Insured: ROBERTA S KARNOFSKY | Policy Number: 8,095,282 |
| Date of Issue: NOV 17, 2000 | Policy Date: NOV 17, 1994 |

| Coverage Date | Coverage | Monthly Benefit | Waiting Period | Maximum Benefit Period |
|---|---|---|---|---|
| | RIDER COVERAGE | | | |
| NOV 17, 1994 | Own Occupation | $4,500 | | TO AGE 65 |
| NOV 17, 1995 | Own Occupation | $225 | | TO AGE 65 |
| NOV 17, 1996 | Own Occupation | $225 | | TO AGE 65 |
| NOV 17, 1997 | Own Occupation | $225 | | TO AGE 65 |
| NOV 17, 1998 | Own Occupation | $225 | | TO AGE 65 |
| NOV 17, 1999 | Own Occupation | $225 | | TO AGE 65 |

The issue ages are 18 to 60.

The Maximum Benefit Period for the Total Disability Benefits will never be less than 24 months.

\* - Indicates changed information (if applicable)

XL-AS-92-2(SC)          **POLICY SPECIFICATIONS PAGE 2 OF 4**          **SC**
XL-A-92 (SC)

**ANNUAL PREMIUM SUMMARY**

| | |
|---|---|
| Insured:  ROBERTA S KARNOFSKY | Policy Number:  8,095,282 |
| Date of Issue:  NOV 17, 2000 | Policy Date:  NOV 17, 1994 |

Premium Structure:

Years

NOV 17, 1994 – NOV 17, 2021   100% LEVEL PREMIUM

The Premiums for Disability Coverages include the multilife discount applied to this Policy.

The Premiums include a volume discount for Total Disability Monthly Benefits over    $2,001 per month.

| Year | Annual Premium | Coverage | Benefit |
|---|---|---|---|
| 2000 – 2020 | $1,405.38 | Total Disability and Partial Disability Benefits: | $5,625 Monthly |
| 2000 – 2020 | $226.45 | Own Occupation: | $5,625 Monthly |
| 2000 – 2020 | $1,631.83 | Annual Premium for All Disability Coverages | |

MODAL PREMIUM SUMMARY

| Year | Modal Premium | Coverage |
|---|---|---|
| 2000 – 2020 | $849.55 | Modal Premium for All Disability Coverages |

| OWNER PAGE | |
|---|---|
| INSURED: ROBERTA S KARNOFSKY | POLICY NUMBER: 8,095,282 |
| DATE OF ISSUE: NOV 17, 2000 | POLICY DATE: NOV 17, 1994 |

**Owner**

THE INSURED.

XL-AS-92-2(SC)          **POLICY SPECIFICATIONS PAGE  4 OF  4**          **SC**
                                                              XL-A-92 (SC)

## DEFINITIONS

AGE -- The age of the Insured on his/her nearest birthday.

COVERAGE DATE -- This is the Policy Date for coverages issued under the initial application. For coverages added later, it is the date used to calculate the premium due. It is not used to determine when coverage is Effective.

CURRENT INCOME -- Income received during a period of Disability for which a benefit is claimed, excluding any amounts earned prior to the start of Disability.

DEMONSTRATED RELATIONSHIP -- With respect to a Loss of Income, the Disability is a substantial factor in producing the loss. A Disability would not have a Demonstrated Relationship to a Loss of Income produced primarily by intervening causes which are not related to the Disability. *no intervening causes*

DISABILITY, DISABILITIES, OR DISABLED -- The occurrence while the Policy is In Force of a condition caused by a Sickness or Injury, which lessens or eliminates the Insured's ability to perform his/her Occupation. Refer to the definitions of Partial and Total Disability.

DOCTOR -- A licensed physician, other than the Insured or Owner, parent, spouse or child of the Insured or Owner, acting within the scope of his/her license.

DOCTOR'S CARE -- The Insured is receiving care, by a Doctor, for a condition causing the Insured's Disability.

EFFECTIVE -- Coverage is Effective when the Policy is issued and delivered to You provided the first full premium is then paid and all answers on the application are true and complete as if made at the time of delivery.
Coverage is Effective on the Issue Date if a premium was paid at the time of application; the Conditional Advance Premium Receipt was given at that time; and the Policy was issued at standard rates exactly as applied for.
Additional coverages are Effective on the Monthly Anniversary on or after the date We issue the new Policy Specifications containing the coverage, subject to payment of the initial premium. If the initial premium is not paid when due, the coverage will be treated as never having been Effective and new Policy Specifications will be issued showing this fact.

EXPIRATION DATE -- This is the Policy Anniversary on or next after the Insured's 65th birthday. Thereafter, the Policy is no longer In Force.

HOME OFFICE -- Our office at 140 Garden Street, Hartford, Connecticut 06154.

IN FORCE -- The status of this Policy after it becomes Effective and prior to termination.

INCOME -- Gross earnings of the Insured from his/her personal activity in any profession(s) or business(es). If the Insured's vocation involves ownership of any portion of any profession or business, including any corporation, Income includes his/her share of the earnings of that profession or business due to such ownership. We will deduct from gross earnings any amount which is deductible as a business expense for Federal Income Tax Purposes. Income does not include:

- investment income;
- rent;
- royalties;
- deferred compensation payments from plans executed more than 30 days prior to Disability;
- retirement income;
- other disability income benefits in force or applied for.

INJURY -- An accidental bodily injury that occurs while the Policy is In Force.

INSURED -- The person insured under this Policy as shown in the Policy Specifications.

ISSUE DATE -- The date the Policy Specifications are printed. Subsequent Policy Specifications carry their own Issue Dates.

LOSS OF INCOME -- The Insured's Pre-disability Income minus his/her Current Income, calculated on a basis consistent with that used to calculate Pre-disability Income.

MAXIMUM BENEFIT PERIOD -- The maximum length of time We will pay monthly Disability benefits, whether for Total and/or Partial Disability. We will not pay monthly Disability benefits for longer than the Maximum Benefit Period because of a change in the type of monthly Disability benefit paid.

OCCUPATION -- The Insured's regular profession(s) or business(es) at the start of Disability.

OWNER -- The person or entity, as shown in the Policy Specifications who has the exclusive right to exercise all rights and privileges under this Policy. If

the Owner dies, the new Owner will be his/her executor or administrator. The Owner may be changed subject to Our notification, by Your Written Request.

PARTIAL DISABILITY -- The Insured is Partially Disabled if he/she:

- is suffering from a current Disability;
- is working at his/her Occupation;
- has a Loss of Income;
- is under a Doctor's Care; and
- can show a Demonstrated Relationship between the Loss of Income and the current Disability.

POLICY DATE -- The date used to determine the premium due date, Policy Anniversary, Policy Year, and Policy Expiration Date.

POLICY YEAR, POLICY ANNIVERSARY, POLICY MONTH, MONTHLY ANNIVERSARY -- Are computed from the Policy Date shown in the Policy Specifications. The first Policy Year begins on the Policy Date. The first Policy Anniversary is the Policy Date plus one year. The Policy Month begins on the same date in each calendar month as the Policy Date. The Monthly Anniversary is the same date in each succeeding month as the Policy Date.

PRE-DISABILITY INCOME -- The greater of:
the average monthly Income earned and received for the last 12 months before the start of Disability; or the average monthly Income earned and received for the last 24 months before the start of Disability; or the average monthly Income earned and received for the highest consecutive 24 months during the 60 months prior to Disability.

PRE-EXISTING CONDITION -- A condition misrepresented or not revealed in the application and for which symptoms existed prior to the date this Policy or additional benefit (which requires Proof of Good Health to purchase) becomes Effective that would cause an ordinarily prudent person to seek diagnosis, care or treatment or for which medical advice or treatment was recommended by or received from a physician.

PRESUMPTIVE TOTAL DISABILITY -- The Insured is Presumptively Totally Disabled when Sickness or Injury causes a total loss of:

- speech;
- hearing in both ears;
- sight in both eyes;
- use of both hands;
- use of both feet; or
- use of one hand and one foot.

PROOF OF GOOD HEALTH -- Proof satisfactory to Us that We receive that the Insured's health is acceptable according to Our standards.

PROOF OF INSURABILITY -- Proof satisfactory to Us that We receive that the Insured is an acceptable risk, according to Our standards. It includes Proof of Good Health and other information such as, but not limited to, the Insured's Age, Occupation, Income, Unearned Income, and other disability income benefits in force or applied for.

PUBLISHED UNDERWRITING LIMITS -- The maximum amounts available based on the Insured's Age, occupation, Income, Unearned Income, and other disability income benefits in force or applied for.

RECIPIENT OF BENEFITS -- The person or entity, as shown in the Policy Specifications designated to receive all Disability benefits of this Policy. The Recipient of Benefits is the Insured unless otherwise stated. The Recipient of Benefits may be changed, subject to Our notification, by Your Written Request.

REHABILITATION PROGRAM -- A formal program designed to prepare the Disabled Insured for useful employment, including programs: operated by the Federal or State government; at a licensed vocational school, business school or accredited college; or of physical therapy provided by a properly licensed organization and as prescribed by the Insured's Doctor.

SICKNESS -- An illness or disease that first appears (makes itself known) while the Policy is In Force. Sickness also includes:

- the transplant of a part of the Insured's body to another person.
- complications of pregnancy or childbirth.
- normal pregnancy or childbirth after 90 consecutive days of related Total Disability, for a pregnancy having its inception while the Policy is In Force.
- cosmetic surgery.

TOTAL DISABILITY -- The Insured is Totally Disabled if he/she cannot perform the main duties of his/her Occupation due to Sickness or Injury. The Insured must be under a Doctor's Care.

UNEARNED INCOME -- Unearned Income may include, but is not limited to:

- investment income;
- rent; or
- royalties.

Unearned Income does not include gross earnings the Insured receives from his/her personal activity in any profession(s) or business(es).

**WAITING PERIOD** -- The period immediately following the start of Disability during which the Recipient of Benefits does not accrue benefits.

**WE, OUR, US, COMPANY** -- Connecticut Mutual Life Insurance Company

**WRITTEN REQUEST** -- A request in writing in a form satisfactory to Us and received at Our Home Office.

**YOU, YOUR** -- The Owner.

## DISABILITY BENEFITS

In order for Disability benefits to be paid, the Insured must be Disabled throughout the full Waiting Period. No benefits are accrued during the Waiting Period. The Waiting Period and the Maximum Benefit Period that apply to each coverage are shown in the Policy Specifications.

The Recipient of Benefits will not receive more than one Disability benefit at a time. The benefit will not be larger if the Insured is Disabled from more than one cause, nor will the Maximum Benefit Period be extended. We will continue to pay benefits while the Insured is Disabled, up to the Maximum Benefit Period shown in the Policy Specifications.

**Total Disability Benefits**

If the Insured is not working in any occupation: We will pay the Total Disability Monthly Benefit shown in the Policy Specifications if the Insured is Totally Disabled and not working in any occupation.

If the Insured is working in a new occupation: A Total Disability may prevent the Insured from returning to his/her Occupation. However, an Income may be earned in a new occupation. If this should occur:

● Any monthly payment for Total Disability made during the first 12 months following the start of Disability will equal the Total Disability Monthly Benefit shown in the Policy Specifications.
● Beginning with the 13th month following the start of Disability, We will base the benefit on the Insured's Loss of Income. If the Loss of Income is greater than 75% of the Pre-disability Income, We will pay the Total Disability Monthly Benefit shown in the Policy Specifications. Otherwise, We will determine the Disability benefit as follows:

$$\text{Total Disability benefit} \times \frac{\text{Loss of Income}}{\text{Pre-disability Income}}$$

**Presumptive Total Disability Benefits**

We will consider the Insured to be Totally Disabled as long as the Presumptive Total Disability continues and the Insured is under a Doctor's Care. Benefits will start to accrue following the earlier of the Waiting Period for Total Disability or 90 days. We will pay the Total Disability Monthly Benefit for up to the Maximum Benefit Period shown in the Policy Specifications. If the loss is deemed by Us to be total and irrecoverable, We will waive:

● the required Waiting Period.
● the requirement of a Doctor's Care.

**Partial Disability Benefits**

We will pay a Partial Disability benefit if the Insured is Partially Disabled and during the Waiting Period:

● the Insured has been Partially Disabled and had a Loss of Income of at least 20% of Pre-disability Income.
or
● the Insured has been Totally Disabled for at least 30 days.

During the first 12 months of Disability, any monthly payment for Partial Disability will equal 50% of the Partial Disability Monthly Benefit shown in the Policy Specifications.

However, if We receive proof of Loss of Income of more than 50% of Pre-disability Income, the Insured may qualify for a larger benefit. The monthly benefit will be determined as follows:

● If the Insured's Loss of Income is between 50% and 75% of Pre-disability Income, We will pay the Partial Disability Monthly Benefit shown in the Policy Specifications multiplied by the ratio of Loss of Income to Pre-disability Income.
● If the Insured's Loss of Income exceeds 75% of Pre-disability Income, We will pay the Partial Disability Monthly Benefit shown in the Policy Specifications.

Beginning with the 13th month following the start of Disability, the monthly benefit will be determined as follows:

● If the Insured's Loss of Income is between 20% and 75% of Pre-disability Income, We will pay the Partial Disability Monthly Benefit shown in

the Policy Specifications multiplied by the ratio of Loss of Income to Pre-disability Income.

- If the Insured's Loss of Income exceeds 75% of Pre-disability Income, We will pay the Partial Disability Monthly Benefit shown in the Policy Specifications.

**Recovery Benefit**

After a period of Disability payments, a Recovery Benefit will be paid provided the Insured's Loss of Income is at least 20% of Pre-disability Income. The Recovery Benefit will be paid through the 6th month following the Insured's full recovery and return to his/her Occupation. The monthly payment will equal the Partial Disability Monthly Benefit shown in the Policy Specifications multiplied by the ratio of Loss of Income to Pre-disability Income.

After 6 months, We will periodically reevaluate the Demonstrated Relationship between the Insured's Loss of Income and the previous Disability. We will continue to make monthly payments as long as the Insured's Loss of Income is at least 20% of Pre-disability Income and there is a Demonstrated Relationship between the Insured's Loss of Income and the previous Disability. However, monthly payments will not exceed the Maximum Benefit Period for Partial Disability.

**Adjustment to Pre-disability Income**

The amount of Pre-disability Income will be adjusted after each 12 consecutive months of Disability. For each 12 months thereafter, We will increase the Pre-disability Income figure from the previous year. We will increase it by the same percentage that the Consumer Price Index (CPI) rose during the preceding calendar year. The CPI will be the one used in adjusting Social Security benefits. If the CPI is replaced by another index, We will use the one used for adjusting Social Security benefits. However, the percentage will never be less than 5%. Once adjusted, the Pre-disability Income will not be decreased during that period of Disability. We will ignore decreases in the CPI.

**Recurring Disability**

For Disability benefits with a lifetime or to age 65 Maximum Benefit Period, a Recurring Disability is a related Disability that starts less than 12 months after a period of Disability ends.

For Disability benefits with a Maximum Benefit Period of less than to age 65, a Recurring Disability is

a related Disability that starts less than 6 months after a period of Disability ends.

We will treat the Recurring Disability as a continuation of the prior one.

A Recurring Disability does not receive a new Maximum Benefit Period. Periods of Recurring Disability will be accumulated under the same Maximum Benefit Period. Benefits will be paid only up to the balance of the original Maximum Benefit Period.

If the Waiting Period has been satisfied, no new Waiting Period is required.

If the Waiting Period has not been satisfied, periods of Recurring Disability will be accumulated to satisfy the Waiting Period.

**OTHER BENEFITS**

**Benefits for Rehabilitation**

We will reimburse the Insured for expenses he/she has actually paid and which are required for a Rehabilitation Program, if:

- We approve the Rehabilitation Program in writing before the Insured begins to participate in it. Our approval will be based on the nature of the Disability and the cost and appropriateness of the Rehabilitation Program.
- Disability benefits are currently being paid.
- We have not disapproved the Rehabilitation Program based on Our periodic review.
- Those expenses are not defined as covered expenses by another insurer or not actually paid from another source.

We will periodically review the Insured's Rehabilitation Program. Our continued approval will be based on the nature of the Disability at the time of review, along with the cost and appropriateness of the Rehabilitation Program.

Expenses include the cost of physical therapy prescribed by the Insured's Doctor, tuition, books and use of equipment that are actually paid for by the Insured and that are required for the Rehabilitation Program.

**Benefits to Survivors**

We will continue to pay the Disability benefit for 6 months from the date of death of the Insured, if the Insured dies while this Policy is In Force, if;

- Disability benefits were being paid at the time of the Insured's death; and

- the Recipient of Benefits has been receiving Disability benefits for at least 12 consecutive months before the Insured's death.

We will pay any benefits due at the Insured's death to the Recipient of Benefits. If the Insured was named as the Recipient of Benefits, We will pay to the surviving spouse or if the Insured is not married at the time of death, to the Insured's estate.

Any payments We make in good faith will fully discharge Us for those payments.

The Policy will terminate on the date of the Insured's death.

**Waiver of Premium**

After the Insured has been Disabled for 90 days, We will waive payment of premiums for as long as the Insured remains Disabled. We will also refund any premium paid during the 90 day period before the Insured qualified for these benefits.

We will waive premiums for this Policy and any attached riders, except those Riders where waiver of premium is elective.

We will waive premiums based on the premium mode and structure in effect when the Insured becomes Disabled.

**Dividends**

While this Policy is In Force, We may credit it with dividends. Dividends are based on divisible surplus, if any, as We may apportion at the end of each Policy Year. We pay dividends in cash on each Policy Anniversary. However, You may request that We apply the dividends toward the premium payments or accumulate the dividends at an interest rate of not less than 5% compounded annually.

**Paying Premiums With Accumulated Dividends**

While the Policy is In Force, an election may be made at the time of application or by Written Request to automatically use accumulated dividends, if sufficient, to pay any premium in default. The accumulated dividends may be insufficient to meet the full premium due. If so, We will change the premium mode, but not the structure if there are sufficient accumulated dividends to meet the premium as changed. If not, the provision will not apply.

**Reinstatement**

This Policy will terminate if premiums are not paid within the Grace Period.

We may require a reinstatement application. If We do not require an application and Proof of Insurability, You may reinstate the Policy by paying the back premiums. Reinstatement will be Effective on the date We receive the back premiums due, at Our Home Office.

If We do require an application, We will require payment of back premiums due and Proof of Insurability. Reinstatement will be Effective on the date We approve Your application. If You are not notified of a disapproval of Your application, this Policy will be reinstated upon the 45th day following the date of receipt of back premiums due.

The reinstated Policy will only cover Disabilities caused by Injuries that occur after the reinstatement is Effective. It will only cover Disabilities caused by a Sickness that first appears (makes itself known) more than 10 days after the date the reinstatement is Effective. Otherwise, the terms of this Policy will be the same as before termination, except for terms added or excluded in connection with the reinstatement process.

**Conversion Privilege at Expiration Date**

This Policy terminates on the Expiration Date shown in the Policy Specifications. However, if the Insured is Totally Disabled on the Expiration Date, the Maximum Benefit Period for Total Disability Benefits will not be less than 24 months.

This Policy may be converted by You to a new Policy on the Expiration Date if the Insured is actively employed at least 30 hours per week and is not Disabled.

Send Us Your Written Request at least 60 days before the Expiration Date to convert Your Policy. We may ask for proof that the Insured will be employed following the Expiration Date for at least 30 hours per week and is not Disabled. However, no other Proof of Insurability will be required.

The new policy will be the policy We then issue for persons over age 65, except for terms added or excluded in connection with the conversion. The Benefit Period will be 24 months. The Waiting Period will be the lesser of:

- the Total Disability Waiting Period under this Policy; or

XL-A-91(SC)

- the maximum Waiting Period under the new policy.

We will base the premium for the new policy on the Insured's Age and occupation at the time We issue the new policy. The rates will be those We are using at the time the new policy is issued.

## PREMIUM PROVISIONS

### Premium Payment Mode

Premiums are due in advance. The first premium is applied as of the Policy Date. Subsequent premiums are due at the end of the term for which the prior premium was paid. Premiums may be paid:

(1) Annually on the Policy Anniversary,
(2) Semiannually every six months after the Policy Date, or
(3) Quarterly every three months after the Policy Date.

We may also permit premiums to be paid monthly on the Policy Date and every month thereafter.

Send premium payments to Our Home Office.

### Changing Your Premium Mode

You may request a change in the premium mode, by Written Request, at any time subject to Our approval. We will not permit a change in premium mode during any period in which the Insured is Disabled. The change will be Effective on the next applicable premium due date.

### Premium Structure

The premium structure for this Policy is made up of:

- A percentage of level premium, where the premium remains fixed until the Expiration Date; and/or
- A percentage of annual renewable premium, where the premiums change on each Policy Anniversary according to the Age of the Insured.

The percentages You have chosen are shown in the Policy Specifications.

### Changing The Premium Structure

You may request a change in the premium structure by Written Request, at any time subject to Our approval. We will not permit a change in premium structure during any period in which the Insured is Disabled.

You may apply for any premium structure that was available on the Policy Date. The level premium rates and annual renewable premium rates will be those We were using on the Policy Date, but will be based on the Age of the Insured at the time the change is Effective.

We will not require Proof of Good Health for an increase in the percentage of level premium. However, We will require Proof of Good Health for an increase in the percentage of annual renewable premium. The change will be Effective on the next premium due date.

### Grace Period

Each premium after the first must be paid within 31 days after the due date to keep this Policy In Force. This is the Grace Period. The Policy will stay In Force during the Grace Period.

### Refunding Premiums At The Insured's Death

We will refund to You any premium paid beyond the end of the Policy Month in which the Insured dies. Our Home Office must receive written notice in a form satisfactory to Us of the death before We provide a refund.

## CLAIMS

### Notice of Claim

A written notice describing the Insured's Disability should be sent to Our Home Office. Send it within 20 days after the Disability occurs or as soon as is reasonably possible.

### Claim Forms

Upon receipt of a notice of claim, We will send You a claim form. This form should be used for filing proofs of loss in the Proof of Disability provision. If You do not receive this form within 15 days after You send a notice, You may comply with the requirements as set forth in the Proof of Disability provision by sending Us written proof covering the occurrence, the character and the extent of the loss for which claim is made.

### Proof of Disability

In order for Us to pay benefits, We must receive within 90 days after each monthly benefit claimed, proof of Disability, and proof of any Loss of Income or any other proof required to substantiate the claim.

XL-A-91(SC)

If it is not possible to send it within 90 days, send it as soon as is reasonably possible. Your claim will not be reduced because of the delay, but We will not accept proof of loss later than 1 year after it was due. We will make an exception if You were not then competent to make the claim.

Proof of continuing Disability must be furnished at reasonable intervals as We may require. From time to time, We may also require satisfactory proof of the Insured's Income before and during the Disability. This proof may include, but is not limited to, copies of the Insured's W-2 Form(s) and/or income tax returns.

At reasonable intervals, We may require the Insured to be examined by Doctors we choose. We will pay for any examination We may require. If the Insured fails to submit to such examination, We will stop paying benefits.

We may also examine the financial records of the Insured. If the insured owns any portion of any profession or business, including any corporation, We may also examine the financial records of that profession, business or corporation. This will be done as often as is reasonably necessary during the Disability. Examinations will be done by Us or a financial examiner We choose. We will pay for any examination We may require. If the Insured does not make a reasonable effort to submit to such examinations, We may stop paying benefits.

### Payment of Claim

One month after the Waiting Period ends, We will make the first Disability benefit payment. We will continue to pay benefits, while the Insured is Disabled, only up to the Maximum Benefit Period shown in the Policy Specifications. Benefits are paid monthly.

### Whom We Will Pay

We will pay Disability benefits to the Recipient of Benefits, except as provided in the Benefits to Survivors provision. If the Recipient of Benefits is not competent to give a release, We may pay up to a total of $1000 to any relative of the Recipient of Benefits We believe is entitled.

If the Recipient of Benefits dies, We will pay the Recipient of Benefit's estate all amounts due. But We may pay up to a total of $1000 to a relative of the Recipient of Benefits whom We believe is entitled.

Any payment We make in good faith will fully discharge Us for that payment.

### Partial Payment

We must be notified as soon as the Insured recovers from a Disability. We will send a prorata payment for that part of the month the Insured was Disabled.

## WHAT IS NOT COVERED

### Disabilities Not Covered

We do not cover Disabilities caused or contributed to by war, whether declared or undeclared.

### Suspended Coverage While In Military

This Policy will be suspended if the Insured enters active military service of any country or international authority. This suspension does not apply to active duty for training which is scheduled to last 90 days or less.

We will refund any part of the premium paid for the suspended period.

If the Insured is released from active duty within 5 years from the date the Insured entered active military service, You may restore this Policy. Send Us a Written Request within 90 days of the Insured's release from active duty and pay the required premium due. We will not require Proof of Insurability. The premium rate will be the same as if the Policy had not been suspended. The restoration will be Effective on the date We receive the required premium due.

The restored Policy will only cover Disabilities caused by Injuries that occur after restoration is Effective. It will only cover Disabilities caused by a Sickness that first appears (makes itself known) more than 10 days after restoration is Effective.

### Pre-Existing Condition Limitations

A Disability or loss caused by a Pre-Existing Condition will not be covered if:

- The Pre-Existing Condition was not fully and accurately described in the application; or
- We have specifically excluded the Pre-Existing Condition by name or specific description.

However, a Disability or loss caused by a Pre-Existing Condition will be covered if the Disability or loss starts 2 years after this Policy or additional benefit (which requires Proof of Good Health to purchase) becomes Effective unless excluded by name

or specific description as provided in the Time Limit on Certain Defenses provision.

## GENERAL RULES

### The Contract

The Policy and the application, including subsequently approved applications and revised Policy Specifications, constitute the entire contract. The application includes any worksheets. A copy of the initial application is attached to and made a part of this Policy. Subsequent applications which are approved will be mailed to You with revised Policy Specifications for attachment to this Policy. This contract is made in consideration of the application(s) and the payment of premiums as provided in this Policy.

Our agents cannot alter or modify any terms of this Policy. They cannot waive any of its provisions.

### Policy Specifications

The initial Policy Specifications are attached to this Policy at issue. We will mail to You, for attachment to this Policy, any new Policy Specifications resulting from:
(1)  a change in the Premium Structure; or
(2)  any additional Disability benefits that were approved; or
(3)  a change in the Waiting Periods or Maximum Benefit Periods; or
(4)  reinstatement of this Policy.

### Right To Apply For Additional Monthly Benefits

You may apply for additional benefits at anytime while this Policy is In Force. We will require a new application and Proof of Insurability. The additional benefits will be Effective on the Monthly Anniversary following the date We approve Your application.

In order to buy additional benefits, the Insured must qualify for a minimum of $100 of additional monthly benefits on the basis of Our Published Underwriting Limits.

The maximum additional benefits You can buy are based on Our Published Underwriting Limits at the time You apply for additional benefits.

### Changing The Policy

An authorized officer of Our company must approve any change to the provisions of this Policy. Our agents are not authorized to make changes or waive any provisions of this Policy. If the change restricts

any coverage, the change request must be signed by You. All changes must be attached to the Policy.

### Assigning Or Transferring This Policy

Any interest or benefits in this Policy may be transferred or assigned by Written Request from You. Provide Us with the full terms of the assignment or transfer. If We do not receive a Written Request, We will not make the change. In any case, We are not responsible for the validity or tax consequences of any assignment or transfer.

### Time Limit On Certain Defenses

After two years from the date this Policy becomes Effective, only fraudulent misstatements in the application may be used to void the Policy or to deny a claim for a Disability that starts after the 2 year period.

After two years from the date any additional benefit or change based on a subsequent application becomes Effective, only fraudulent misstatements in the subsequent application may be used to void or deny the additional benefit or Policy change.

No claim for Disability that starts two years after the date this Policy or additional benefit (which requires Proof of Good Health to purchase) becomes Effective will be denied because a disease or physical condition existed before coverage began: Unless We have specifically excluded the disease or condition from coverage by name or specific description.

No claim for Disability caused by a disease or physical condition fully and accurately described in the application will be denied on the basis the disease or condition existed before coverage began: Unless We have specifically excluded the disease or condition from coverage by name or specific description.

With respect to statements made in the application for any additional benefit Rider: The Time Limit on Certain Defenses provisions of the Rider will apply.

### Legal Action Against Us

Legal action to recover benefits under this Policy may not be started for at least 60 days after written proof of Disability was sent to Us. Also, legal action may not be started later than 6 years after the Policy requires written proof of Disability to be submitted.

### Misstatement of Age

If the Insured's Age is misstated on the application, We will change the benefit amount to reflect the

XL-A-91(SC)

benefits the premiums would have bought at the correct Age.

We will make a refund if We would not have issued the Policy at the Insured's correct Age. We will also make a refund if coverage would have ended before We accepted the premium.

Any refund will only cover premiums that have been paid for coverage not received. We will deduct any amounts paid to any designated person or entity.

**Conformity With State Statutes**

Any provision that on the date this Policy becomes Effective conflicts with the state statutes where the Insured resides, is changed to meet the minimum requirement of such statutes.

# CONNECTICUT MUTUAL LIFE INSURANCE COMPANY
### Hartford, Connecticut

# OWN OCCUPATION RIDER

This Rider modifies the Total Disability Benefits provided by Your Policy. Income earned from a new occupation will not affect the Total Disability Benefits provided under this Rider. Payment under this Rider will be in lieu of any other Total Disability Benefit payments under the Policy, up to the Monthly Benefit for this Rider shown in the Policy Specifications. Unless a new definition is specified, all definitions in the Policy apply to this Rider.

## General

This Rider is made a part of Your Policy in consideration of the application and premium payments. A copy of the application is attached to and made a part of Your Policy. If this Rider is issued after the Policy was issued, We will send new Policy Specifications.

## Premiums

The premiums for this Rider are shown in the Policy Specifications. The premium structure for this Rider will be the same as the Policy. Premiums for this Rider must be paid along with the premiums for the Policy. If You keep Your Policy In Force after this Rider terminates, You will no longer pay premiums for this Rider.

## Modification To The Total Disability Benefits Provision of Your Policy

The following replaces the second paragraph of the Total Disability Benefits provision of Your Policy up to the Monthly Benefit for this Rider shown in the Policy Specifications.

- If the Insured is working in a new occupation: A Total Disability may prevent the Insured from returning to his/her Occupation. However, an Income may be earned in a new occupation. If this should occur, We will pay the Total Disability Monthly Benefit shown in the Policy Specifications.

If the Total Disability Monthly Benefit of the Policy is more than that for this Rider as shown in the Policy Specifications, The Total Disability Benefit provision of the Policy governing the Insured's working in a new occupation will apply to the excess.

## Dividends

Each year We determine how much We may pay as dividends. We specify how dividends are based in the Dividend provision of Your Policy. We use the same procedure to determine the dividends We may pay on this Rider.

## Time Limit On Certain Defenses

After two years from the date this Rider becomes Effective, only fraudulent misstatements in the application may be used to void the Rider or to deny a claim for a Disability that starts after the 2 year period.

After two years from the date any additional benefit or Rider change based on a subsequent application becomes Effective, only fraudulent misstatements in the subsequent application may be used to void or deny the additional benefit or Rider change.

No claim for Disability that starts two years after the date this Rider or additional benefit (which requires Proof of Good Health to purchase) becomes Effective will be denied because a disease or physical condition existed before coverage began: Unless We have specifically excluded the disease or condition from coverage by name or specific description.

No claim for Disability caused by a disease or physical condition fully and accurately described in the application will be denied on the basis the disease or condition existed before coverage began: Unless We have specifically excluded the disease or condition from coverage by name or specific description.

## Termination

This Rider will end on the earliest of the following dates:

- 31 days after the due date of any unpaid premium;
- as of the next premium due date upon Written Request;
- the Expiration Date of the Policy;
- the death of the Insured.
- Termination will be without prejudice to any claim originating prior thereto.

CONNECTICUT MUTUAL LIFE
INSURANCE COMPANY

PRESIDENT

M-91(SC)

(m91sc)

# CONNECTICUT MUTUAL LIFE INSURANCE COMPANY
### Hartford, Connecticut

## ENDORSEMENT

The definition of Sickness in the DEFINITIONS section is deleted and replaced with the following:

SICKNESS -- An illness or disease that first appears (makes itself known) while the Policy is In Force. Sickness also includes:

- the transplant of a part of the Insured's body to another person.

- complications of pregnancy or childbirth.

- cosmetic surgery.

This endorsement is part of the Policy to which it is attached. Issued by CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Hartford, Connecticut.

*Christine C. Pearse*

Secretary

H2268a-92

(h2268a)

001305

**PART 1**
**COMPLETE FOR ALL CASES:**

**APPLICATION FOR DISABILITY INCOME INSURANCE** ber *021*
Connecticut Mutual Life Insurance Company

1. PROPOSED INSURED:  *brause 12296  2 (first, middle, last) various 85*

R O B E R T A  S  K A R N O F S K Y  ( M D )

2. SEX:
Female ☑
Male ☐

3. Date of Birth:
Month   Year

4. Birth State:
*NY*

5. Insured's Social Security No.

6. ☐ Owner's Social S_ _ _ _ No.

*SAME*

7. Policyowner Name: (If other than insured)     (first, middle, last)

8. *Insured's address if different if insured*

10. *Premium office to*  556 Wampler Dr.

*Emp Add   10-5  Lexington Ct*
*Chas                      S.C.*

13. List exact duties:     *Physician*

*Anesthesiologist*

13a. What % of your duties include physical activity such as climbing, crouching, lifting, etc.?   *N/A*

14. What state do you work in?   *SC*

15. How long employed in current job?   Years  *.3 mos.*
If less than 2 years, list previous occupation and duration:
*Residency in Conn.*

16. Do you plan to change your occupation?   ☐ Yes   ☑ No

17. Have you been actively at work daily on a full-time basis for the past 3 months? If no, explain. (Disregard vacation days, normal non-working days and absences that total less than 7 days.)   ☑ Yes   ☐ No

18. Do you plan any foreign travel or residence? If yes, submit supplement (F257).   ☐ Yes   ☑ No

19. In the past three years have you taken part in any avocation such as parachute jumping, hang gliding, skin or scuba diving? Is such activity planned? If yes, submit Avocation Supplement. (F1093)   ☐ Yes   ☑ No

20. In the past three years have you been in a motor vehicle accident, *Ticket for* or charged with a "moving" violation of any motor vehicle law or has your driver's license ever been suspended?   ☑ Yes   ☐ No  *1st mph in 30 zone*

21. Is any application for disability, accident or health insurance *1st mph in 30 zone* pending or is the reinstatement of any policy pending?   ☐ Yes   ☑ No

22. Select One:   ☐ Tobacco Rates   ☑ Non-Tobacco Rates

23. Premium Billing
a. ☐ Association Billing   ☑ Direct Billing   ☐ Group Individual Billing (Complete 23a & 23b)   b. ☐ Group List Billing
☐ Annual   ☑ Semi-Annual   ☐ Quarterly   ☐ Monthly Check Service (complete form attached to this application)   ☐ New Group Number (Submit billing form F874)
☐ New Association Group   ☐ Add to Existing Group Number
☐ Add to Existing Association #  8 1 0 6 9   #

24. Policy Dating:   ☐ Save age   ☐ Date of issue   ☑ Indicate specific date  *11/17/94* (only date up to the 28th)

25. INSURED'S EMPLOYMENT STATUS:
☐ Employee (No Ownership)
☑ Sole Proprietor
☐ Partner in Partnership
☐ Shareholder in Sub "S" Corporation
☐ Owner of Corporation, if yes:
_____ % Ownership
_____ # of Full-time Employees

26. PREMIUM TO BE PAID BY:
☐ Employer/Corporation   ☑ Insured
If both, list percentage of split ............   Employer/Corp. _____ %
Insured _____ %
Payor's Social Security or Tax ID # _____
(If different than owner or insured)

NOTE:  Uses maiden name for business.

F26.1-92(SC)

F26192%0

**COMPLETE FOR ALL CASES**

*Estimated*

| 27. EARNED INCOME | Current Annual Rate | Prior Tax Year | 28. UNEARNED INCOME | Current Annual Rate | Prior Tax Year |
|---|---|---|---|---|---|
| a. Salary, Fees, Commissions & Bonus | $120,000 | $ *in* | Dividends and Interest | $ | $ |
| b. Pension and Profit Sharing Contributions | $ | $ *Resident* | Net Capital Gains | $ | $ |
| c. Earnings from other Occupations (describe) | $ | $ | Rental Income (after expenses, before depreciation) | $ | $ |
| d. Total Earnings (a+b+c) | $ | $ | Other (describe) | $ | $ |
| e. Deductible Business Expenses | $ | $ *Resident* | | $ | $ |
| f. Total Net Earned Income (d−e) | $120,600 | $ | Total Unearned Income | $ None | $ None |

TOTAL NET WORTH IF 4 MILLION DOLLARS OR MORE: (assets minus liabilities)    $ _____

| 29. | DISABILITY INCOME IN FORCE: | | Type of Plan: Individual (I), Group (G) or Association (A) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Company | Type I, G or A | Issue Year | Monthly Amount | Benefit Period | Elimination Period | Employer Pay Yes / No | | Is this application a replacement? Yes / No | Effective Replacement Date |
| None | | | | | | | | | |

30. IS PROPOSED INSURED ELIGIBLE FOR:
State cash sickness benefits?... Yes ☐   No ☑

31. WILL EMPLOYER CONTINUE PROPOSED INSURED SALARY OR INCOME IF DISABLED:    Yes ☐   No ☑
If yes, amount per month $ _____   # of month(s) _____

32. **COMPLETE FOR DISABILITY INCOME BUSINESS OVERHEAD EXPENSE (BOE)**

| AMOUNT | $ |
|---|---|
| ELIMINATION PERIOD | |
| BENEFIT PERIOD | |

33 ☐ BOE   ☐ SBOE
☐ MANAGERIAL DUTIES ENDORSEMENT
☐ AUTOMATIC ADDITIONAL BENEFIT INCREASE
☐ FUTURE INSURABILITY RIDER
$ _____

34. DIVIDENDS: (Select one)
☐ Accumulation
☐ Applied
☐ Cash

AUTOMATIC PREMIUM DIVIDEND
☐ Yes   ☐ No

35. List the total current, average monthly expenses of the business.

Rent . . . . . . . . . . . . . . . . . $_____
Mortgage Interest Payment . . . . . . . . $_____
Utilities (gas, light, water) . . . . . . . . $_____
Taxes on real estate . . . . . . . . . . . $_____
Cost of leasing equipment . . . . . . . . $_____
Malpractice, property and liability insurance . . . . . . . . . . . $_____
Dues for professional societies . . . . . $_____
Business subscriptions . . . . . . . . . . . $_____

Percentage of ownership _____ %
Percentage of overhead expenses _____ %

Interest on Business Loans . . . . . . . . . $_____
Telephone . . . . . . . . . . . . . . . . . . . . $_____
Employee's Salaries (not including principals) . . . . . . . . . . . . . . . . $_____
Accountant / Legal Fees . . . . . . . . . . $_____
Depreciation . . . . . . . . . . . . . . . . . . $_____
Maintenance service . . . . . . . . . . . . . $_____
Other . . . . . . . . . . . . . . . . . . . . $_____
Sub Total . . . . . . . . . . . . . . . . . . . . . . $_____
Professional Replacement . . . . . . . . . . . . . . $_____
TOTAL MONTHLY EXPENSES . . . . . . . . . . . $_____

Additional information, include details.

*Please issue 5,500 starter*

F26.2-92

001305

## COMPLETE FOR DISABILITY INCOME ON CM XL

☑ CM XL   ☐ CM XL Select

**36.** ☐ BASE POLICY   ☐ MANAGERIAL DUTIES ENDORSEMENT

| | |
|---|---|
| Amount | $ 5500 |
| Benefit Period | 65 |
| Elimination Period | 90 |

**37.** ☐ AGE 61 PLUS POLICY

| | |
|---|---|
| Amount | $ |
| Benefit Period | 2 yrs. |
| Elimination Period (Total Disability) | |

If selected, proceed to question 42, then question 44 and continue to complete application.

**38.**
- ☐ Lifetime Rider . . . . . . . . . . . . . . . . . . . $ _____
- ☒ Own Occupation Rider . . . . . . . . . . . . . . $ _____
- ☐ Cost of Living Rider . . . . . . . . . . . . . . . $ _____
  - ☐ 3%   ☐ 5%   ☐ CPI
- ☐ Future Insurability Option (FIO)   $ _____
  - ☐ Complete if desired FIO option month differs from anniversary month
  - *(Month)* _____
- ☒ Automatic Additional Benefit Increase
  - ☐ CM XL Select   ☐ Extended Partial Rider   ☐ Partial Rider

**39.** ☐ Short Term Rider *(Only complete one amount per section)*

| | | | |
|---|---|---|---|
| Amount | $ | $ | $ |
| Benefit Period | 4 Months | 3 Months | 6 Months |
| Elimination Period | 60 Days | 90 Days | 180 Days |

**40.** ☐ Supplemental Rider *(To age 65 benefit period only)*

| Selected Coverage | (A) Partial | (B) Proportional | (C) Own Occupation |
|---|---|---|---|
| Amount | $ | $ | $ |
| Elimination Period | | | |

☐ Conversion Option   ☐ SuperWrap

**41.** RECIPIENT OF BENEFITS ASSIGNMENT
*(Complete if other than insured.)*   ○

Name: _____
Relationship: _____
Address: _____
_____
_____

☐ Social Security # [_____]
☐ Tax ID #

**42.** PREMIUM STRUCTURE   *(Do not complete for Age 61 Plus Policy)*

- ☒ If not completed 100% level premium is assumed.
- ☒ Available in 10% increments only.
- ☒ Policy year 1 indicates initial premium split.
- ☒ Complete "Details" section for additional future Premium splits.

| Policy Year | Level | Annual Renewable | Total | |
|---|---|---|---|---|
| | % | % | | must |
| | % | % | | equal |
| | % | % | | 100% |

\* CM XL Select Available with 100% Level Premiums Only

**43.** DIVIDENDS
- ☐ Accumulations
- ☐ Automatic Premium
- ☐ Dividend
- ☐ Cash
- ☐ Applied
- ☒ Reduced premium

**44.** DIVIDEND ASSIGNMENT
*(Complete if other than owner. If completed, #43 is "cash".)*

Name: _____   Address: _____
Relationship: _____   _____
☐ Social Security # [_____]
☐ Tax ID #

Details: _____

F26.3-92(SC)

F26392SC

**45. NONMEDICAL**

Current Height and Weight: 5 (feet) 4 (inches) 128 (lbs.)

Name and address of personal physician: _NONE_

Date and reason last consulted: _NONE_

Diagnosis and treatment: _NONE_

**46.** Have you ever received treatment for or been diagnosed as having or had any of the following? (If yes, circle condition(s) and give details.) ☐Yes ☒No

a. Chest Pain
b. High Blood Pressure
c. Heart Attack
d. Stroke
e. Diabetes
f. Acquired Immune Deficiency Syndrome (AIDS)
g. Tumor
h. Cancer
i. Asthma
j. Pneumonia
k. Emphysema
l. Arthritis
m. Physical Impairment
n. AIDS-Related Complex (ARC)
o. Seizure
p. Paralysis
q. Hepatitis
r. Venereal Disease
s. Depression
t. Emotional Disorder

**47.** Have you ever had any disorder of the following?: (If yes, circle condition(s) and give details.) ☐Yes ☒No

a. Blood
b. Lymph nodes
c. Blood vessels
d. Skin
e. Neck
f. Back
g. Spine
h. Bones
i. Joints
j. Eyes
k. Ears
l. Heart
m. Lungs
n. Breasts
o. Gastrointestinal System
p. Liver
q. Kidney
r. Genitourinary System
s. Immune System
t. Nervous System

| | Yes | No |
|---|---|---|
| **48.** Other than above, within the past 5 years have you had any illness, infection, injury or surgery, physical examination, electrocardiogram, X-Ray or laboratory study, or been a patient in a hospital or other medical facility? _septoplasty ~1991_ | x | |
| **49.** Have you smoked cigarettes or used any tobacco products in the past 12 months? If yes, specify | | X |
| **50.** Have you ever requested or received a pension, benefits or payment because of injury, sickness or disability? | | X |
| **51.** Have you ever used cocaine or been advised to restrict the use of alcohol or drugs? | | X |

**DETAILS:** Include diagnosis, dates, duration, names and addresses of all attending physicians and medical facilities.

48.   Surgery at Mount Sinai Hospital in Hartford, CT

This Application consists of a Part I and a Part II, if any. It also includes any amendments to either part. No agent may change the terms of this Application or any policy issued by the Company. And no agent may waive any of the Company's rights or requirements.

If a premium is paid with this Application, the Company's liability is stated in a Conditional Advance Premium Receipt. And the Applicant acknowledges receiving a copy of the Receipt.

If the Company is not liable under a Conditional Advance Premium Receipt, I agree that any policy(ies) issued on this Application shall take effect only if the first full premium is paid; and such policy(ies) is issued and delivered to the owner; and all answers and statements in this Application are true and complete as if made at the time of delivery. This paragraph shall be subject to the incontestability and time limit of certain defenses provisions of any policy(ies) issued because of this Application.

I represent that the answers and statements in this Application are true and complete to the best of my knowledge and belief. This Application shall be attached to and form a part of any policy of insurance issued. I have received a Notice of Insurance Information Practices.

Under penalties of perjury, I certify that my correct Social Security number is shown and that I am not subject to back up withholding.

Signed at _Charleston SC_ this _17th_ day of _November_ 19 _94_

Witness/Licensed/Agent _Edgar J. Faircloth_    Signature of Proposed Insured X _D. Kahovsky MD_

The owner agrees to be bound by all statements, answers and agreements contained in Part I and any Part II of this Application.
The owner certifies under penalties of perjury that its correct Tax Identification number (or Social Security number) is shown and that it is not subject to back up withholding.

Signed at _Charleston SC_ this _17th_ day of _November_ 19 _94_

Witness/Licensed/Agent _Edgar Faircloth_    Signature of Owner X _D. Kahovsky MD_

**AUTHORIZATION TO RELEASE INFORMATION**

I authorize any of the following: licensed physician; health professional; hospital; clinic; other medically related facility; insurance company; reinsuring company; MIB Inc.; consumer reporting agency; or employer that has any record or knowledge of me, or of my health to give Connecticut Mutual Life Insurance Company, GroupAmerica Insurance Company, or its reinsurers all such information. I permit the Company to give to MIB Inc. a brief report of this information.

This information will be used to determine eligibility for disability insurance. All medical information may be released. This includes: medical history; mental or physical condition; diagnosis; prognosis; and treatment. This release shall be valid for thirty (30) months from its date. A copy of this is as valid as the original. I have the right to receive a copy.

Witness X _Edgar J. Faircloth_    Print Name of Proposed Insured _D. KAROTSKY_

Date _Nov. 17, 1994_    Signature X _D. Kahovsky MD_

F26.4-92

.Summons and complaint of
within entitled cause received at
this office and service accepted
in accordance with law
this ___18__ day of _Feb 04_

*Raymond W. Farmer*

Director of Insurance
and Attorney to Accept Service
Columbia, SC



Presort
First Class Mail
ComBasPrice

U.S. POSTAGE »PITNEY BOWES

ZIP 29201 $ 006.68⁰
02 1W
0001369055 FEB. 18. 2014

9ᒆ 7ᒆᑫᑫ ᑫᑫᑫᒆ 7033 5ᒆ83 ᑆᒕᗱᑫ

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

SERVICE OF PROCESS

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
c/o Corporation Service Company
1703 Laurel Street
Columbia, SC 29201-0000

STATE OF SOUTH CAROLINA
COLUMBIA, S.C. 29202-3105