# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Roberta Karnofsky, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Massachusetts Mutual Life )<br>Insurance Company, )<br>)<br>Defendant. )<br>) | C.A. No.: 2:14-cv-949-PMD<br><br>**ORDER** |

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff (ECF No. 33) and Defendant (ECF No. 34). For the reasons set forth herein, Defendant's Motion is granted in part and denied in part, and Plaintiff's Motion is denied.

## **BACKGROUND**

This action arises out of a dispute over disability insurance benefits. Plaintiff "is a physician who has specialized and was Board certified in Anesthesiology since 1993." (Pl.'s Mem. Supp. Mot. Partial Summ. J., ECF No. 33-1, at 3.) In 1994, Plaintiff "purchased a disability policy with an 'Own Occupation Rider' from Connecticut Mutual Life Insurance Company now known as Massachusetts Mutual Life Insurance Company." (*Id.* at 1.) Plaintiff was subsequently injured in a serious automobile accident.[1] Plaintiff's injuries have prevented her from performing anesthesia in the operating room. However, she is still able to treat pain management patients as she did before she became disabled. Before the accident, Plaintiff derived approximately fifty percent of her income from operating room procedures and the other fifty percent from pain management procedures.

---
1. Plaintiff's automobile accident occurred on April 10, 2007. On March 30, 2010, "Plaintiff sued her underinsured carrier to recover damages in excess of those she recovered from the driver that hit her." (Def.'s Mem. Supp. Mot. Summ. J., ECF No. 34-1, at 3.)

In 2011, Plaintiff filed for total disability benefits pursuant to her disability insurance policy. From July 12, 2011, to March 9, 2012, Defendant paid Plaintiff total disability benefits while Plaintiff underwent two surgeries, but did not make any total disability payments thereafter. Defendant did pay Plaintiff partial disability benefits for a brief period from March 10, 2012, to June 9, 2012. After a lengthy period of correspondence, Plaintiff filed suit on February 6, 2014.

Plaintiff moved for partial summary judgment on the grounds that she is totally disabled under the terms of the policy. Her policy states:

> The insured is **Totally Disabled** if he/she cannot perform the main duties of his/her Occupation due to Sickness or Injury. The insured must be under a Doctor's Care.

(Def.'s Mot. Summ. J., Exh. A, ECF No. 34-2, at 11.) (emphasis added). In contrast, the policy defines partial disability as follows:

> The insured is **Partially Disabled** if he/she:
> - Is suffering from a current Disability;
> - Is working at his/her occupation;
> - Has a loss of Income;
> - Is under a Doctor's Care; and
> - Can show a Demonstrated Relationship between the Loss of Income and the current Disability.

(*Id.*) (emphasis added). Defendant asserts it is entitled to summary judgment on several grounds. First, Defendant argues because Plaintiff can still perform some of the duties of her occupation, she does not qualify for total disability. Second, Defendant asserts "Plaintiff was not entitled to disability benefits from April 2007 to September 10, 2011 because Plaintiff did not comply with the Notice of Claim provision of her policy" or "the Proof of Disability provision of her policy." (Def.'s Mot. Summ. J., ECF No. 34, at 1–2.) Third, Defendant claims "Plaintiff is not entitled to 'Partial Disability' benefits after June 2012 because Plaintiff failed to establish that there was a

'Demonstrated Relationship' between any alleged 'Loss of Income' and her claimed disability." (*Id.* at 2.) Fourth, Defendant states Plaintiff's claims for bad faith, punitive damages, and future disability benefits fail as a matter of law. Finally, Defendant asserts Plaintiff has not shown sufficient evidence to support a claim for emotional distress.

## **PROCEDURAL HISTORY**

On July 6, 2015, Plaintiff filed her Motion for Partial Summary Judgment. That same day, Defendant also filed its Motion for Summary Judgment. The parties both filed responses to the respective motions on July 23, and each filed a reply on August 3. This matter is now ripe for consideration.

## **LEGAL STANDARD**

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural

shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

When opposing parties file motions for summary judgment, the trial court applies the same standard of review to both motions. *See Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 657 (D. Md. 2002). "The role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* at 658 (quoting *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)); *see also Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."). The mere fact that both parties seek summary judgment "does not 'establish that there is no issue of fact and require that summary judgment be granted to one side or another.'" *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 244 (4th Cir. 1992) (quoting *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214 (4th Cir. 1965)); *see also ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to *resolve* genuine issues of material facts on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment."); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983) ("[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist."). Nevertheless, dueling motions for summary judgment "may be probative of the nonexistence of a factual dispute," because "when both parties proceed on the same legal theory and rely on the same material facts the court is signaled that the case is ripe for summary judgment." *Shook v. United*

*States*, 713 F.2d 662, 665 (11th Cir. 1983) (citing *Bricklayers, Masons & Plasterers Int'l Union v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)); *see also Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967) ("[B]y the filing of a [summary judgment] motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted.").

## DISCUSSION

The parties have both moved for summary judgment on the question of whether Plaintiff is totally disabled pursuant to the terms of her policy. Accordingly, the Court will address that issue first and then proceed to the remainder of Defendant's Motion.

### I. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for Partial Summary Judgment on the ground that she is totally disabled under the terms of her policy. She asserts several arguments to support her claim. As the Court has jurisdiction pursuant to 28 U.S.C. § 1332,[2] the Court must apply South Carolina law and, where necessary, predict how the Supreme Court of South Carolina would decide a particular issue. *See Nationwide Mut. Ins. Co. v. Powell*, 292 F.3d 201, 203 (4th Cir. 2002); *Hartsock v. Am. Auto. Ins. Co.*, 788 F. Supp. 2d 447, 450–51 (D.S.C. 2011).

"The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties." *Chan v. Thompson*, 395 S.E.2d 731, 734 (S.C. Ct. App. 1990) (citing *RentCo., a Div. of Fruehauf Corp. v. Tamway Corp.*, 321 S.E.2d 199 (S.C. Ct. App. 1985)). "The rights of the parties must be measured by the contract which the parties themselves made, regardless of its wisdom, reasonableness, or failure of the parties to guard their rights carefully." *Id.* (citing *Conner v. Alvarez*, 328 S.E.2d 334, 336 (S.C. 1985)). "When a contract is perfectly plain and

_____
2.    Plaintiff and Defendant are in complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

capable of legal construction the language of the contract determines the full force and effect of the document." *Id.* (citing *Conner*, 328 S.E.2d at 336). "Under South Carolina law the interpretation of an insurance policy is a matter of law." *Graf v. Allstate Ins. Co.*, No. 2:06-cv-1045-CWH, 2007 WL 221244, at *1 (D.S.C. Jan. 25, 2007) (citing *TCX, Inc. v. Commonwealth Land Title Ins. Co.*, 928 F. Supp. 2d 618, 624 (D.S.C. 1995).

The crux of the parties' disagreement over the contract language is the meaning of "main duties." The policy provides that in order for Plaintiff to be eligible for total disability benefits, she must be unable to perform the main duties of her occupation. Regrettably, the parties chose not to define "main duties" in their agreement. Nonetheless, the Court need not define that term as it finds that the plain meaning of the total disability provision requires that Plaintiff be unable to perform more than one main duty. The parties' use of the plural form of duty necessarily requires that Plaintiff be unable to perform more than one of her main duties. Although Plaintiff is an anesthesiologist, it is undisputed that performing anesthesia in the operating room only constituted fifty percent of Plaintiff's income before the accident, and a relatively low portion of her working hours. The remaining fifty percent of her income was derived from pain management procedures. Importantly, before the car accident, Plaintiff spent one day a week performing anesthesia and the other four days performing pain management procedures. Plaintiff asserts that performing anesthesia in the operating room is the only main duty of her occupation as an anesthesiologist. The Dictionary of Occupational Titles states that an anesthesiologist's occupation consists solely of performing anesthesia during "surgical, obstetrical, and other medical procedures." (Pl.'s Mem. Supp. Mot. Partial Summ. J., ECF No. 33-1, at 3 n.2.) However, her practice prior to the accident indicates otherwise. If operating room anesthesia constituted one of Plaintiff's main duties, pain management procedures must

also have constituted one of her main duties since they occupied more of her time and provided an equal amount of income. Accordingly, since Plaintiff is able to perform at least one of the main duties of her occupation, she cannot be totally disabled under the plain meaning of the policy.

Additionally, the Court agrees with Defendant that Plaintiff's interpretation of the total disability provision would give no effect to the partial disability provision of her policy. As stated in *Parker v. Byrd*, "'[w]here the agreement in question is a written contract, the parties' intention must be gathered from the contents of the entire agreement and not from any particular clause therein.'" 420 S.E.2d 850, 852 (S.C. 1992) (quoting *Thomas-McCain, Inc. v. Siter*, 232 S.E.2d 728, 729 (S.C. 1977)). Here, if Plaintiff were considered totally disabled while continuing to work at her occupation, there would never be a situation in which the partial disability provision of Plaintiff's policy would apply. According to the policy, a partially disabled insured is someone who, *inter alia*, "is suffering from a current Disability" and "is working at his/her occupation." (Def.'s Mot. Summ. J., Exh. A, ECF No. 34-2, at 11.) Here, Plaintiff is suffering from a current disability but is continuing to work at her occupation. Thus, it appears that she fits perfectly within the definition of partial disability. To interpret the contract differently would torture the parties' intent. Having decided that under the plain meaning of the contract Plaintiff is not totally disabled, the Court declines to address Plaintiff's remaining arguments. Accordingly, Plaintiff's Motion for Partial Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted as to total disability benefits.

**II. Defendant's Motion for Summary Judgment**

In addition to moving for summary judgment on the total disability provision as discussed above, Defendant also moved for summary judgment on several other grounds that are addressed below.

**A. Notice of Claim and Proof of Loss**

Defendant contends it does not owe Plaintiff any benefits for the period from April 2007, to September 10, 2010, on the grounds that, during that time, Plaintiff did not comply with either the "notice of claim" or "proof of loss" provisions of her policy. "As a general rule, breach of an insurance policy's notice clause automatically relieves the insurer of its obligations under the contract, including the payment of proceeds due." *Wright v. UNUM Life Ins. Co.*, No. 2:99-2394-23, 2001 WL 34907077, at *2 (D.S.C. Aug. 31, 2001). "The burden of proof for the insured's failure to notice rests with the insurer." *Id.* (citing *Vermont Mut. Ins. Co. v. Singleton*, 446 S.E.2d 417, 421 (S.C. 1994)). "'No rule of law is more firmly established in this jurisdiction than that one suing on a policy of insurance, where the notice required by the policy is not timely given, cannot recover . . . .'" *Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, 407 S.E.2d 655, 657 (S.C. Ct. App. 1991) (quoting *Lee v. Metro. Life Ins. Co.*, 186 S.E. 376, 381 (S.C. 1936)). In the first party insurance dispute context, "the court has gone so far as to hold that the failure to give the required notice in the allotted time is fatal to the right of recovery, even if it be shown that the insurance company has suffered no harm by the delay." *Lee*, 186 S.E. at 381. Plaintiff's policy provides, "[a] written notice describing the Insured's Disability should be sent to Our Home Office. Send it within 20 days after the Disability occurs or as soon as reasonably possible." (Def.'s Mem. Supp. Mot. Summ. J., ECF No. 34-1, at 16.) In *Vermont Mutual Insurance Co. v. Singleton*, the South Carolina Supreme Court interpreted

very similar language to "or as soon as reasonably possible" to mean "within a reasonable time frame."  446 S.E.2d 417, 422 (S.C. 1994).

Here, where Plaintiff has known of her disability since April 2007,[3] and where Plaintiff filed suit in 2010 against her automobile insurance carrier seeking damages for permanent impairment and disability, the Court finds that Plaintiff failed to notify Defendant within a reasonable time frame.  Plaintiff failed to file her notice of claim with Defendant until September 12, 2011, more than four years after her accident.  Although Plaintiff asserts that she did not file because she did not want to consider herself disabled, that argument is not founded on any legal basis.  Thus, although Plaintiff's desire to recover is admirable, Defendant's Motion for Summary Judgment must be granted as to the period from April 2007 through September 10, 2010.

Although prejudice is not required under South Carolina law, the Court concludes that Defendant was prejudiced by Plaintiff's failure to timely notify Defendant of her claim. Plaintiff's policy included rights that, due to Plaintiff's delay, Defendant was unable to assert in a timely manner. For example, the policy entitled Defendant to have Plaintiff undergo a medical exam.  Plaintiff's argument that Defendant waived timely notice of claim by investigating Plaintiff's injury is unsupported by any citation to law. Additionally, Defendant's communications with Plaintiff about her claim each state that Plaintiff's failure to provide timely notice might have caused prejudice to Defendant and do not state that Plaintiff's claim will be paid.  Having concluded Plaintiff's failure to notify Defendant of her claim is sufficient, with or

---

3.   In her deposition, Plaintiff states that she engaged counsel on April 10, 2007.  (Def.'s Mot. for Summ. J., Exh. B., Karnofsky Deposition, ECF No. 34-3, at 2.)  As discussed in note 1, *supra*, April 10th was the date of her accident.  She further states that she authorized her counsel to file suit related to her car accident on March 30, 2010. (*Id.* at 3.)

without prejudice, to grant Defendant summary judgment for the period from April 2007 to September 10, 2010, the Court declines to address the parties' arguments as to proof of loss.

### B. Demonstrated Relationship

Defendant also asserts it is entitled to summary judgment for the period after June 2012, because Plaintiff failed to establish a demonstrated relationship between her loss of income and her disability. The Court disagrees. Although Defendant asserts that Plaintiff's loss of income is a result of factors independent of her disability, particularly the significant operating losses incurred by Plaintiff's new business, Plaintiff contradicts that assertion and states "when I saw that my condition was making it more difficult for me . . . when I became less and less able to earn a living the way I had been trained to earn a living[,] . . . that's why I formed [the new business]." (Karnofsky Dep., ECF No. 33-11, at 126.) Additionally, Defendant's own expert admitted that, as far as she knew, Plaintiff's loss of income earned as an operating room anesthesiologist was a result of her accident. (Mueller Dep., ECF No. 33-15, at 65.) The Court finds that there is a genuine issue of material fact as to whether Plaintiff has established a demonstrated relationship between her loss of income and her disability. Accordingly, summary judgment is inappropriate and Defendant's Motion is denied on this point.

### C. Bad Faith

South Carolina recognizes the bad faith refusal to pay benefits cause of action where the following elements are met:

> (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396–97 (S.C. 1992) (citing *Bartlett v. Nationwide Mut. Fire Ins. Co.*, 348 S.E.2d 530 (S.C. Ct. App. 1986)). It is undisputed that

there was a mutually binding contract of insurance between Plaintiff and Defendant and that Defendant did not pay benefits on portions of Plaintiff's claim. Additionally, Defendant's refusal to pay benefits, if wrongful, caused damage to Plaintiff because she did not obtain any policy benefits for her disability. Thus, summary judgment turns on whether there are any genuine issues of material fact as to the second and third elements. Although, as discussed above, the Court finds that Plaintiff is not entitled to total disability as a matter of law, Plaintiff asserts that Defendant wrongfully refused to pay both total **and** partial disability benefits. While the Court agrees that Plaintiff's injury did not constitute a total disability under the terms of the policy, and that Plaintiff was not entitled to benefits until after September, 2010, there are genuine issues of material fact as to whether her injury constituted a partial disability thereafter. Accordingly, those partial disability benefits may have been "due under the contract." If they were, then Defendant's bad faith refusal to pay would be at issue. To show bad faith, Plaintiff's expert, a former insurance claims supervisor, has testified that Defendant failed "to comply with the [duty] of good faith and fair dealing" in administering Plaintiff's claim. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., ECF No. 36, at 17.) Taken in the light most favorable to Plaintiff, a reasonable jury could find that Defendant denied Plaintiff's claim for benefits in bad faith based on Plaintiff's expert's report and testimony. Accordingly, Defendant's Motion is denied as to Plaintiff's bad faith claim.

### D. Punitive Damages

Next, Defendant argues that it is entitled to summary judgment on punitive damages because Plaintiff has failed to produce any clear and convincing evidence that Defendant handled her claim willfully or recklessly. "In South Carolina, 'the plaintiff has the burden of proving punitive damages by clear and convincing evidence.'" *Univ. Med. Assocs. of Med. Univ. of S.C.*

*v. UnumProvident Corp.*, 335 F. Supp. 2d 702, 712 (D.S.C. 2004) (quoting S.C. Code Ann. § 15-33-135) ("*Unum*"). That evidence must show that "defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Id.* (quoting *Scott v. Porter*, 530 S.E.2d 389, 396 (S.C. 2000)). "Conduct is willful, wanton, or reckless when it is committed with a deliberate intention or in such a manner or under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights." *Bryant v. Muskin Co.*, 873 F.2d 714, 715 (4th Cir. 1989). Here, viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that Defendant is not entitled to summary judgment based on the report and testimony of Plaintiff's expert. She stated:

> It is my opinion Mass Mutual failed to: fully investigate the relevant and applicable facts of the claim, fairly consider all information obtained, including that which tends to favor claim payment or continuation as well as that which tends to favor claimed declination or termination; consider the interests of its insureds at least equal to its own; promptly and timely pay benefits owed under the policy; know and understand the language and meaning of their insurance policies; and conduct a fair, thorough, and objective review. The violation of those duties constitutes a failure to comply with the good (sic) of good faith and fair dealing.

(Fuller Report, ECF No. 36-12, at 7.) A reasonable jury could make a fair inference, based on Plaintiff's expert's evidence, that Defendant's conduct in denying Plaintiff's claims was willful, wanton, or reckless.

### E. Future Disability Benefits

Next, Defendants contend that they are entitled to summary judgment on Plaintiff's claims for future disability benefits. The Court agrees. Plaintiff cites to *Nichols v. State Farm Mutual Insurance Co.* and the California case it relied on, *Egan v. Mutual of Omaha Insurance Co.*, for the proposition that a bad faith claim's damages include the future value of the insurance policy calculated to present value. 306 S.E.2d 616 (S.C. 1983); 620 P.2d 141 (Cal. 1979).

However, as discussed in this Court's published decision in *Unum*, the reasoning for disallowing future benefits in a breach of contract action also applies to a bad faith claim. 335 F. Supp. 2d at 710–11; s*ee also O'Dell v. United Ins. Co. of Am.*, 132 S.E.2d 14 (S.C. 1963); *Odiome v. Prudential Ins. Co. of Am.*, 179 S.E. 669 (S.C. 1935). In particular, there is always the possibility "that an insured could recover from disability, and thus reach a stage where benefits are not due." *Unum*, 335 F. Supp. 2d at 711 (citing *Odiome*, 179 S.E. at 670). *Odiome* and *O'Dell* "have not been overruled in the bad faith context, and the reasoning still seems to apply." *Id.* The Court notes that its decision in *Wright* was made without reference to *Odiome* and *O'Dell*, and that the defendants in *Wright* did not offer "a persuasive reason to limit, as a matter of law, the type of consequential damages allowed for bad faith refusal to pay insurance benefits." 2001 WL 34907077, at *12. Upon review of Judge Norton's in-depth analysis in *Unum* and the *Odiome* line of cases, the Court agrees that future disability benefits are unavailable in a South Carolina bad faith cause of action. Accordingly, Defendant's Motion for Summary Judgment is granted as to future disability benefits.

    **F.  Emotional Distress**

Finally, Defendants move for summary judgment as to Plaintiff's claims for emotional distress. The Fourth Circuit has ruled that an insurer's failure to pay benefits cannot render it liable for emotional distress unless the failure to pay is the proximate cause of that distress. *State Farm Fire & Cas. Co. v. Barton*, 897 F.2d 729, 733 (4th Cir. 1990). Plaintiff has produced the report of an expert licensed clinical psychologist who states that, in his opinion, "[Plaintiff's] lack of income as well as being the victim of an antagonist (sic) relationship with the disability insurance carrier has contributed significantly to the level of morbidity that she has been experiencing." (Waid Report, ECF No. 36-14, at 10.) In contrast, Defendant asserts that its

refusal to pay cannot be the proximate cause of Plaintiff's emotional distress because in the expert's deposition he could not state that Plaintiff's depression and anxiety were solely caused by Defendant. (Waid Dep., ECF No. 34-11, at 8–9.) Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that there is a genuine issue of material fact as to whether Plaintiff's emotion distress was proximately caused by Defendant's failure to pay. Accordingly, Defendant's motion for summary judgment as to emotional distress is denied.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED**. It is further **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**December 7, 2015**
**Charleston, South Carolina**