**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Roberta Karnofsky, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:14-cv-949-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Massachusetts Mutual Life | ) | |
| Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's Motions in Limine to Exclude Testimony

of Mary Fuller and Oliver Wood (ECF Nos. 46 & 47).  For the reasons set forth herein, both

motions are granted in part and denied in part.

**PROCEDURAL HISTORY[1]**

Defendant filed its motions in limine on August 28, 2015.  Plaintiff filed a response to

both motions on September 29, to which Defendant replied on October 9.  This matter is now

ripe for consideration.

**LEGAL STANDARD**

The introduction and admissibility of expert testimony is governed by Rule 702 of the

Federal Rules of Evidence, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will
>> help the trier of fact to understand the evidence or to determine a fact in
>> issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and

---

1.    The Court dispenses with a background section as unnecessary to the present motions.  For the background of
this case, see the Court's Order issued on December 7, 2015 (ECF No. 59).

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering the expert witness testimony bears the burden of demonstrating "its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The Supreme Court has recognized that, under Rule 702, trial judges serve as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This "basic gatekeeping obligation" identified in *Daubert*, and now embraced by Rule 702, applies to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The gatekeeping obligation, like other determinations of the admissibility of evidence, requires the trial judge to exercise an informed and broad discretion, "guided by the overarching criteria of relevance and reliability." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). Although the trial court is granted broad discretion, *see Cooper*, 259 F.3d at 199, the rejection of proposed expert witness testimony is the exception rather than the rule, *see SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 634–35 (E.D.N.C. 2013) (citing Fed. R. Evid. 702 advisory committee's note (2000)); *see also United States v. Crisp*, 324 F.3d 261, 269–70 (4th Cir. 2003) ("The Supreme Court emphasized in *Daubert* that 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596)).

## DISCUSSION

### I.  Mary Fuller

Plaintiff has proffered Mary Fuller as an expert witness on insurance industry standards and what constitutes bad faith.  Defendant objects to Ms. Fuller's testimony on the grounds that it (1) is based on an incorrect understanding of South Carolina's duty of good faith and fair dealing, (2) relies on irrelevant Market Conduct Examinations ("MCEs") and Regulatory Settlement Agreements ("RSAs"), (3) contains impermissible legal conclusions, (4) is unnecessary on the subject of bad faith, (5) is not expert testimony, (6) is too vague, and (7) contains medical testimony, which Fuller is unqualified to give.  Defendant does not challenge Ms. Fuller's qualifications or reliability.  The Court will address each ground *seriatim*.

### A.  Incorrect Understanding of South Carolina's Duty of Good Faith and Fair Dealing[2]

First, the Court is not inclined to exclude Fuller's opinions on the basis that she was unaware of the precise interpretation South Carolina courts have applied to the duty of good faith and fair dealing.  Although she periodically refers to industry standards and how they relate to good or bad faith, the Court will not permit her to testify as to legal conclusions.  Here, Ms. Fuller is using her knowledge and expertise to opine on Defendant's handling of Plaintiff's claim, and the Court will not wholly exclude her testimony because she is unaware of the intricacies of South Carolina bad-faith law.  As asserted by Defendant in its motion, it is the Court's province to instruct the jury on the law.  Therefore, Defendant's first argument fails.

### B.  Market Conduct Examinations and Regulatory Settlement Agreements

Second, Defendant seeks to exclude Ms. Fuller's testimony because she relies on two MCEs and RSAs that did not apply specifically to Defendant.  Although the Court recognizes

---

2.    For ease of reference, the Court's headings refer to the section headings used in Defendant's motions in limine.

Ms. Fuller's use of those documents in forming her opinion, she cited them only three times in her thirty-nine page report.  Additionally, in her deposition, Ms. Fuller makes clear that although the MCEs were conducted on UNUMProvident ("UNUM"),[3] "the industry meetings [she] attended . . . [had] 15 insurance companies [] identify standards that they thought were being violated and what needed to be done in order to avoid violating those standards . . . ."  (Pl.'s Resp. Opp'n, Ex. 2, Fuller Dep., ECF No. 46-2, at 6.)    Further, "[t]he market conduct examination clearly identified practices that were found to be improper."  (*Id.* at 7.)  In contrast, "there were some very unique things in [the] RSA involving UNUM that have no application to any other companies."  (*Id.*)  Thus, although the MCEs were conducted solely on UNUM, those MCEs were discussed throughout the industry and were helpful in determining what conduct would not violate industry standards.  However, the RSAs applied solely to UNUM and included things that were not deemed to be industry standards.  Accordingly, the Court concludes that Ms. Fuller's opinions need not be excluded wholesale due to her reliance on the MCEs and RSAs.  However, to the extent any part of her opinion is based solely on the RSAs, that portion is excluded.

## C. Impermissible Legal Conclusions

Defendant also seeks to prevent Ms. Fuller from testifying on the basis that her opinions constitute impermissible legal conclusions.  Expert witnesses are not "allowed to testify on legal conclusions or in terms that have legal import which would not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Wright v. UNUM Life Ins. Co.*, No. 2:99-2394-23, 2001 WL 34907077, at *10 (D.S.C. Aug. 31, 2001) (quoting Fed. R. Evid. 702).  "However, 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'"  *Id.*

---

3.    Ms. Fuller worked in various positions at UNUMProvident for ten years.

(quoting Fed. R. Evid. 704(a)).    Therefore, Defendant's motion to exclude Ms. Fuller's

testimony of legal conclusions is granted.[4]

### D.  Unnecessary Testimony on Bad Faith

Defendant next asserts that there is no need for any expert testimony on bad faith, stating

that a determination of bad faith merely requires the application of common sense.  The Court

disagrees.  Ms. Fuller's report is replete with a comparison of insurance industry standards to the

facts of this case.  Although, as just discussed above, Ms. Fuller is precluded from testifying as

to any legal conclusions, she may nonetheless be helpful to the jury as they seek to identify the

applicable industry standards and determine whether they were violated in this case.

Furthermore, this Court has routinely considered the testimony of a bad-faith expert at the

summary judgment stage.  *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. J.T. Walker Indus.*, No. 2:08-

2043-MBS, 2010 WL 1345287, at \*8 (D.S.C. Mar. 30, 2010) (relying on an expert report stating

that an insurer "failed to comply with insurance industry standards and practices by placing its

own interests above those of its insured"); *Ocean Winds Council of Co-Owners, Inc. v. Auto-*

*Owners Ins. Co.*, 241 F. Supp. 2d 572, 576–77 (D.S.C. 2002) (relying on bad-faith expert's

testimony as sufficient to create a genuine issue of material fact).    Accordingly, the Court

concludes that Ms. Fuller's testimony as to Defendant's bad faith is not unnecessary.

### E.  Testimony is not Expert Testimony

Similar to its assertions that Ms. Fuller's testimony is unnecessary, Defendant also claims

that her testimony is not expert testimony because she is merely interpreting the policy and

drawing inferences from the claim file.  The Court disagrees.  Here, although Ms. Fuller's

---

4.    Defendant asserts that Ms. Fuller will testify in the form of a legal conclusion as to Defendant's bad faith and
as to the proper interpretation of Defendant's contract with Plaintiff.  On both issues, the Court grants Defendant's
motion as to any legal conclusions to which Ms. Fuller might testify, but does not bar Ms. Fuller's opinions as to
insurance industry standards.

opinions necessarily make reference to the policy and the claim file, she is not simply interpreting the documents.  Instead, as is the usual practice of an expert, she reviewed the documents in order to compare Defendant's conduct with the industry standards referenced in her report.  Therefore, the Court concludes that Ms. Fuller's testimony is expert testimony and need not be excluded because she referenced the policy at issue and the documents in the claim file.

### F.  Testimony is too Vague

Defendant also objects to Ms. Fuller's testimony as to industry standards on the grounds that it is too vague.  Defendant cites several cases for that proposition, but the Court finds each of those cases distinguishable.  First, Defendant cites *Rezulin Products Liability Litigation*, 209 F. Supp. 2d 531, 543 (S.D.N.Y. 2004), in which the court refused to admit an expert's testimony that honesty was an industry standard.  Defendant cites two other cases in which an expert testified as to a similarly vague industry standard: *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y.) (excluding an expert opinion about an industry standard where the proposed industry standard was that "broker dealers are expected to act with the highest integrity"), *amended in part on reconsideration*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001); *Grdinich v. Bradlees*, 187 F.R.D. 77, 81 (S.D.N.Y. 1999) (excluding an expert opinion about an industry standard where the stated basis for that industry standard was common sense).  Here, the industry standards referenced in Ms. Fuller's report are far more precise than those in the above-referenced cases.  Ms. Fuller states that the following obligations are standard in the insurance industry:

- To fully investigate the relevant and applicable facts of a claim;
- To fairly consider all information obtained, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination;

- To consider the interests of its insureds at least equal to its own and to resolve indeterminable issues in their insured's favor;
- To promptly and accurately notify their insureds of significant information or applicable policy provisions which might adversely affect their claims;
- To promptly and timely pay benefits owed under the policy;
- To establish and maintain procedures for the purpose of guaranteeing compliance of [sic] these obligations;
- To know and understand the language and meaning of their insurance policies and to administer their claims accordingly;
- To know and understand the applicable laws of the controlling jurisdiction and to administer their claims accordingly;
- To be able to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective, and thorough evaluation of their insureds' claims for disability benefits;
- Denial of a claim should never be based on speculation;
- Consultants should be objective in their assessment of the facts and not attempt to bias the claims investigation process in any way;
- Documents relating to the company's policies or claims handling procedures should not be destroyed to avoid disclosure to its policyholders;
- To conduct a fair, thorough, and objective review.

(Def's. Mot. Lim., Ex. 1, Fuller Report, ECF No. 46-1, at 1–2). Defendant did not elect to challenge any of the individual industry standards, choosing instead to make a blanket objection to all of them. These standards are sufficiently specific to satisfy Rule 702(a)'s requirement that the expert's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). As a result, the Court concludes that Ms. Fuller's testimony on insurance industry standards should not be excluded.

### G. Testimony Contains Medical Testimony Ms. Fuller is Unqualified to Give

Finally, Defendant asserts Ms. Fuller may not testify as to Plaintiff's medical condition and treatment, her restrictions and limitations, her medications and their side effects, or the cause of her disability. Plaintiff has not responded to this argument and has thus conceded the issue. Accordingly, Ms. Fuller may not testify on the topics listed above.

**II. Oliver Wood**

Defendant also moved to exclude Dr. Oliver Wood on the grounds that he improperly supplemented his reports, his present-value testimony is speculative and irrelevant, and that his testimony about Defendant's wealth is irrelevant, speculative, and unfairly prejudicial. Defendant also moved to bifurcate the punitive damages portion of the trial in the event that the Court found evidence of Defendant's wealth relevant. Plaintiff identified Dr. Oliver Wood as a potential damages expert in her expert disclosures filed on December 15, 2014. In her disclosures, Plaintiff stated that she had previously produced Dr. Wood's preliminary reports. Those reports, however, do not mention any damages pertaining to the present dispute over Plaintiff's disability policy. Then, on December 31, Defendant served Dr. Wood with a subpoena asking that he produce any opinions as to Plaintiff's losses as a result of Defendant's failure to pay Plaintiff disability benefits. Dr. Wood's office responded on January 13, 2015, stating that they did not have any documents or files on this case. Defendant then noticed Dr. Wood's deposition for June 8. On June 4, four days before Dr. Wood's deposition, Plaintiff served Defendant's counsel with Dr. Wood's supplemental reports. Defendant alleges that these reports were entirely new reports rather than supplements of Dr. Wood's prior reports. The deadline for producing expert reports pursuant to the scheduling order was six months earlier, on December 14, 2014. Defendant's counsel cancelled Dr. Wood's scheduled deposition, citing his fear that had he deposed Dr. Wood, the Court might consider his objections to Dr. Wood's late report waived. The Court will first address Defendant's contention that Dr. Wood's supplemental reports were improper.

### A. Dr. Wood's Reports Were Improperly Supplemented

Defendant moved to exclude Dr. Wood on the basis that he improperly supplemented his reports. The Court declines to do so. Because Dr. Wood's subsequent reports were served on Defendant's counsel well after the deadline for producing expert reports, the Court need only determine whether the reports supplemented his previous reports. Under Rule 26(a), "'[t]he parties must supplement [their expert] disclosures when required under Rule 26(e).'" *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630 (W.D.N.C. 2008) (quoting Fed. R. Civ. P. 26(a)(2)(D)). Rule 26(e) provides that:

> A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . . .

Fed. R. Civ. P. 26(e)(1). "Supplementation of an expert report permits a party to correct inadvertent errors or omissions." *Gallagher*, 568 F. Supp. 2d at 630. "Supplementation, however, is not a license to amend an expert report to avoid summary judgment." *Id.* (collecting cases). "Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report." *Id.* (collecting cases). The Court is convinced that such gamesmanship is afoot here. Dr. Wood's original reports contain no analysis of damages resulting from Defendant's failure to pay benefits on Plaintiff's policy. In fact, the first time he analyzes damages as a result of lost benefits is in his report dated June 3, 2015. Accordingly, the Court finds that Dr. Wood's June 3 report is not a supplemental report as envisioned by Rule 26. Thus, the Court must determine what sanctions, if any, to impose as a result.

Rule 37(c)(1) "provides for the exclusion of evidence that is not disclosed in accordance with Fed. R. Civ. P 26, including supplemental disclosures relating to experts." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003).  As discussed above, Dr. Wood's later reports do not constitute supplemental reports as envisioned by Rule 26.  "The language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is 'substantially justified,' and (2) when the nondisclosure is 'harmless.'"  *Id.* at 596 (quoting Fed. R. Civ. P. 37(c)(1)).  To determine whether Dr. Wood's reports were substantially justified or harmless, the Court must apply the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 597.  The Court concludes that Dr. Wood's significant additions to his report surprised Defendant.  However, Defendant's counsel was scheduled to take Dr. Wood's deposition four days after Dr. Wood's new report was served on him.[5]  Thus, Defendant's counsel had the ability to cure the surprise.  Defendant's counsel could have taken Dr. Wood's deposition on the scheduled date and deposed him as to his original and supplemental reports.  Alternatively, Defendant's counsel could have moved in the alternative either to exclude Dr. Wood's supplemental report or to amend the scheduling order to permit Defendant's counsel to depose Dr. Wood beyond the deadline.  This case does not yet have a set trial date, and allowing Dr. Wood's supplemental report will not unduly disrupt the pre-trial proceedings.  Additionally, the

---

5.    Defendant's counsel cancelled Dr. Wood's deposition upon receipt of his supplemental reports.  Defendant's counsel states that this cancellation was out of fear that if he deposed Dr. Wood, the Court would hold that he waived any argument as to excluding Dr. Wood's supplemental reports.

Court concludes that Dr. Wood's testimony as to damages arising out of Defendant's alleged failure to pay benefits is important evidence.

Thus, the final question is Plaintiff's explanation for her failure to disclose the evidence. It is here that the Court is most hesitant to allow Dr. Wood's supplemental reports to be admitted. Plaintiff argues Dr. Wood's subsequent reports constituted supplemental reports as envisioned by Rule 26(e)(1). As discussed above, however, the Court disagrees. Dr. Wood's subsequent reports contain completely new information not even remotely referenced by his timely-produced original reports. Accordingly, Plaintiff's explanation is not very strong, and the Court concludes that Plaintiff has not met her burden of establishing substantial justification or harmlessness. Nonetheless, in light of the current stage of the proceedings, the Court declines to exclude Dr. Wood's subsequent reports under the default sanction imposed by Rule 37(c)(1). Instead, the Court will permit Defendant's counsel to depose Dr. Wood as to his subsequent reports and the opinions contained therein. Should Defendant's counsel elect to depose Dr. Wood, all costs of his deposition will be borne by Plaintiff. *See* Fed. R. Civ. P. 37(c)(1)(A). Additionally, should Defendant wish to designate an additional expert to rebut Dr. Wood's testimony, Defendant is hereby permitted to do so at its own cost. *See* Fed. R. Civ. P. 37(c)(1)(C). Plaintiff will, of course, be permitted to depose any rebuttal expert at its own cost.

**B.  Dr. Wood's Present-Value Testimony is Speculation and Irrelevant**

As discussed in this Court's Order dated December 7, 2015, future disability benefits are unavailable in a South Carolina bad faith cause of action. Accordingly, Defendant's motion is granted as to Dr. Wood's testimony about future benefits.

**C. Dr. Wood's Testimony About Defendant's Wealth is Irrelevant, Speculative, and Unfairly Prejudicial**

As also discussed in this Court's December 7, 2015, Order, Plaintiff's claim for punitive damages is not barred. Thus, Dr. Wood's testimony is not irrelevant, speculative, or unfairly prejudicial. Instead, his testimony is relevant to one of the factors in an award of punitive damages—the wealth of the Defendant. The Court believes that any potential unfair prejudice that Defendant might suffer can be prevented by proper jury instructions and by bifurcating the punitive damages portion of the trial. However, the Court agrees with Defendant that Dr. Wood's report as it relates to Defendant's wealth need only be admitted to the extent it determines Defendant's net worth. *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) ("Under well-settled law, however, factors such as [net worth] are typically considered in assessing punitive damages."); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 154–55 (4th Cir. 2008) (same). Accordingly, the Court will not exclude Dr. Wood's report as to Defendant's net worth on this basis.

**D. Bifurcation**

Defendant further moved to bifurcate the trial if the Court found evidence of Defendant's wealth relevant. Upon consideration of Defendant's motion, the Court has determined that it will proceed as follows: the Court will explain both compensatory and punitive damages, including the difference between the two, in the Court's jury charge at the end of trial. Then, the Court will include a question on the verdict form asking the jury to determine whether it would like to consider evidence of punitive damages.[6] Should the jury indicate that it would like to consider evidence of punitive damages, the Court will proceed to a second phase of the trial, wherein the

---

6.    Provided, of course, that the jury finds liability and actual damages on a cause of action that would permit an award of punitive damages.

Court will permit the parties to present limited additional evidence related solely to the issue of punitive damages, such as net worth.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's Motion in Limine to Exclude Mary Fuller is **GRANTED IN PART** and **DENIED IN PART.**

It is further **ORDERED** that Defendant's Motion in Limine to Exclude Oliver Wood is **GRANTED IN PART** and **DENIED IN PART.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**February 25, 2016**
**Charleston, South Carolina**